| | |
|---|---|
| SSGC JOHN DOE 11987086<br><br>　　　　Plaintiff,<br><br>v.<br><br><br>Sisters Of Mercy of the Americas South Central Community, Inc. as successor in interest to Sisters of Mercy, Baltimore, Inc.<br>101 Mercy Drive<br>Belmont, NC 28012<br><br>　　Serve On:<br>　　CSC-Lawyers Incorporating<br>　　Service Company<br>　　7 St. Paul Street, Suite 820<br>　　Baltimore, MD 21202<br><br>And<br><br>Sisters of Mercy of the Americas, Inc.<br>8403 Colesville Rd, Suite 400<br>Silver Spring, MD 20910<br><br>　　Serve On:<br>　　CSC-Lawyers Incorporating<br>　　Service Company<br>　　221 Bolivar St<br>　　Jefferson City, MO 65101<br><br>　　　　Defendants. | IN THE<br><br>CIRCUIT COURT<br><br>FOR<br><br>BALTIMORE COUNTY<br><br>CASE No.: C-03-CV-25-002583 |

EXHIBIT 2

# COMPLAINT

Plaintiff SSGC John Doe 11987086, by and through his attorneys, Jonathan Schochor, Kerry Staton, Joshua Kahn and Schochor, Staton, Goldberg and Cardea, P.A., hereby sues Sisters of Mercy of the Americas South Central Community, Inc. as successor in interest to Sisters of

1

Mercy Baltimore, Inc. and Sisters of Mercy of the Americas, Inc. (hereinafter, "Defendants"). In support of his causes of action, Plaintiff alleges as follows:

1. This is a claim allowed by the Child Victims Act of 2023 because it arises out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor. The claim is for negligence; negligent supervision, monitoring, training, and retention; and breach of special duty, for which Plaintiff seeks damages.

2. Plaintiff was subjected to a recurring pattern of sexual misconduct by agents under the control and supervision of Defendants' counsellor Tom Smith [hereinafter referred to as "Perpetrator"].

## THE PARTIES

3. At all times relevant to the wrongful conduct complained of herein, Plaintiff SSGC John Doe 11987086 was a resident of Baltimore County in the State of Maryland. Plaintiff currently resides in Baltimore in the State of Maryland.

4. Plaintiff alleges that sexual offenses, as defined by Md. Family Law Code § 5-701, were committed against him when he was a minor.

5. Sisters of Mercy of the Americas South Central Community, Inc. as successor in interest to Sisters of Mercy Baltimore, Inc. and Sisters of Mercy of the Americas, Inc. [hereinafter referred to as "Defendants"] are religious corporations located at 101 Mercy Drive, Belmont, North Carolina 28012 and 8403 Colesville Rd, Silver Spring, Maryland 20910 respectively, whose businesses involve the operation of Associated Catholic Charities Inc., d/b/a Catholic Charities of Baltimore d/b/a St. Vincent's Villa, a residential facility operated under the auspices of Defendants where the abuse complained of herein occurred.

6.     At all times relevant to the events alleged, Perpetrator was under the supervision and control of Defendants.

## JURISDICTION AND VENUE

7.     The Court has general personal jurisdiction over Defendants pursuant to Md. Code, Cts. & Jud. Proc. § 6-102(a) because Defendants conduct business in the State of Maryland. The Court also has specific personal jurisdiction over Defendants because the conduct complained of herein transpired in the State of Maryland.

8.     This Court has subject matter jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

9.     Venue of this proceeding lies in Baltimore County pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201 because Plaintiff's causes of action arise out of acts and omissions by Defendants that occurred in Baltimore County, Maryland.

## RELATIONSHIPS BETWEEN THE PARTIES

10.     Perpetrator was a residential counsellor under the supervision and control of Defendants while Plaintiff was a resident at the Defendant's facility.

11.     Defendants were in superior positions to receive sensitive information regarding immoral and criminal conduct pertaining to Perpetrator and/or residents under their control and supervision which was of critical importance to Plaintiff's well-being. This information was not available to Plaintiff or to the public.

12.     As a result of his position, Perpetrator was able to use the facilities of Defendant to further his sexual and criminal conduct with Plaintiff.

13. Plaintiff and his family entrusted his well-being to Defendants and their actual or apparent agents, servants, and/or residents under their control and supervision (including Perpetrator), who held themselves out as being dedicated to providing a safe environment to children. Defendants also had a corresponding obligation to be solicitous for and protective of Plaintiff in the exercise of their position of trust, confidentiality, and moral authority.

14. A special, confidential, and fiduciary relationship existed between Plaintiff and Defendants.

15. Defendants owed a duty to Plaintiff grounded upon the duty of good faith and fair dealing, to act with the highest degree of trust and confidence. This relationship included the duty to warn, disclose, and protect parish children and students from sexual abuse and exploitation by other residents, including Perpetrator, whom Defendants controlled and/or supervised.

16. At all relevant times, Defendants and their actual or apparent agents, servants, and/or residents under their control and supervision, placed their own interests and reputations over the safety and security of the children assigned to their care, including Plaintiff, and turned a blind eye to signs of sexual abuse.

17. Defendants' disregard for the known danger of child sexual abuse at their facilities was a function of both negligence and Defendants' recognition that their stature, reputation, and economic interests would be adversely affected by any public disclosure of the Defendants' failure to control and supervise residents under their care.

## FACTS SPECIFIC TO PLAINTIFF'S ABUSE

18. Plaintiff was born in 1966. At all times material to the abuse, he was a minor.

19. From 1976-1978, Plaintiff lived at the boys' home at St. Vincent's Villa Maria, a residential facility operated under the auspices of Defendants.

20. Plaintiff was sexually abused by Perpetrator approximately 50 times over the two years he was a resident of Defendants' facility. The abuse would occur in the shower room in the basement of Defendants' facility. Left alone with the Perpetrator, Plaintiff was subjected to sexual abuse entailing sexual touching, oral sex – Plaintiff received from and performed on Perpetrator, sodomy, and other unimaginable sexual acts.

21. As a direct result of the negligent, grossly negligent, intentional, careless, and/or reckless conduct of Defendants and their agents, servants, employees, and/or residents under their control and supervision (including but not limited to Perpetrator), Plaintiff has suffered serious and severe physical and emotional damages of a permanent and lasting nature, including but not limited to:

   a. Severe stress and attendant medical problems;

   b. Emotional distress and anger;

   c. Sever mental anguish and despair;

   d. Severe anxiety, nervousness, fearfulness, and panic attacks;

   e. Flashbacks, intrusive thoughts, and night terrors;

   f. Post-traumatic stress disorder;

   g. Depression;

   h. Suicidal ideation;

   i. Attempts at suicide;

   j. Profound anger;

   k. Irritability;

   l. Harmful, disruptive, or distressing personality changes;

   m. A loss of faith;

    n. Ongoing humiliation, embarrassment, shame, and guilt;

    o. Physical pain, nausea, and stress;

    p. Sleeplessness, and night sweats;

    q. A loss of enjoyment of life;

    r. Extreme difficulty in trusting and interacting with others, including those in positions of authority and/or those in intimate relationships with Plaintiff;

    s. Extreme difficulty in participating in and enjoying intimate relationships;

    t. A loss of earning and earning capacity;

    u. Damages for past expenses incurred as a result of psychological treatment;

    v. Future damages for medical, health care, and psychological treatment; and

    w. Other damages that may become apparent during the course of discovery or awarded by a jury.

22. Each and every type of damages set forth in the above paragraph was a direct and proximate result of each and every count set forth below.

23. All of Plaintiff's causes of action arise from conduct characterized by negligence, gross negligence, fraudulent concealment, fraud, and reckless and willful disregard for Plaintiff's health and safety.

## COUNT I: NEGLIGENCE

24. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopts and re-alleges each such allegation.

25. Perpetrator sexually abused Plaintiff while under the control and/or supervision of Defendants.

26. At all times material, Defendants undertook and owed a duty to their residents, the public, and individuals present on property under their ownership or control, to exercise reasonable care (a) to prevent and mitigate the effects of foreseeable harm caused by dangerous conditions on property (including Perpetrator) under their ownership and/or control, (b) to manage, supervise, control, and direct clergy who served at Defendants, and (c) to forbid pedophiles like Perpetrator from obtaining access to minors, especially unsupervised access.

27. Plaintiff's care, welfare, and/or physical custody was entrusted to Defendants, including when he was under the care and supervision of Defendants, and was on properties and premises operated and staffed by Defendants.

28. Defendants voluntarily accepted and were entrusted with Plaintiff's care by Plaintiff's parents. Defendants had a duty to protect Plaintiff during the time that Plaintiff was entrusted to their care. As such, Defendants owed Plaintiff, as a minor, a special duty of care, in addition to a duty of ordinary care, to care for Plaintiff as a reasonably prudent parent would care for him (i.e., to act in *loco parentis*), such that parents could expect that the care taken of their children at church, classes, and at residential activities would be that afforded by a reasonably prudent parent.

29. Given Plaintiff's status as a minor child, Defendants had a duty to exercise and provide heightened vigilance, supervision, and care to Plaintiff as compared to what would be required for an adult.

30. Defendant owed Plaintiff a duty to protect him and warn him of potential harm by Perpetrator when Plaintiff was on the premises owned, controlled, managed, and/or staffed by Defendant.

31.     Defendant had a duty to exercise reasonable care to control Perpetrator as an agent under their control and supervision, even at times where he was acting outside of the scope of his employment, to prevent him from intentionally harming others when he was on Defendants' property.

32.     Defendants, directly or by and through their actual agents, servants, employees, and/or residents under their control and supervision, knew or reasonably should have known of Perpetrator's pedophilia, and that he was capable of committing sexual acts against Plaintiff and/or other children.

33.     Defendants, directly or by and through their actual agents, servants, and employees, systematically breached their duties to Plaintiff by:

   a. enabling Perpetrator's abuse by allowing him unrestricted access to children and placing him in a position of trust and authority;

   b. allowing Perpetrator to come into one-on-one contact with Plaintiff without effective supervision;

   c. failing to garner sufficient information about whether or not their leaders, counsellors, clergy, teachers, and/or other people working at or living in Defendants' facility would safely interact with children;

   d. failing to prevent Perpetrator from committing wrongful sexual acts with children;

   e. failing to properly investigate the actions of agents, servants, employees and/or residents under their control and supervision to ensure that children were subjected to safe and appropriate clerics and employees;

   f. failing to monitor for and subsequently investigate acts of sexual abuse and sexual acts committed on the property and/or by Perpetrator, and thereafter reveal such

       facts to Plaintiff's parents, the parents of other children assigned to their care, the public, child welfare, and/or law enforcement agencies;

   g. failing to implement, promulgate, and/or enforce protocols to ensure that children would not fall victim to sexual predators like Perpetrator;

   h. failing to provide a safe environment where children are not subjected to sexual abuse;

   i. holding Perpetrator out to Plaintiff, Plaintiff's parents, and the public as being of sufficient moral and ethical repute;

   j. failing to remove Perpetrator from employment positions or physical locations where he could act on his propensity and disposition to commit sexual abuse; and

   k. other negligent actions and omissions that may be disclosed through the course of discovery.

34. It was reasonably foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to Plaintiff, the children entrusted to their care would be vulnerable to sexual abuse by servants, agents, employees, and/or residents under their control and supervision, including Perpetrator.

35. Defendants' aforementioned negligence directly and proximately caused Plaintiff to sustain severe and permanent damages as described above. Neither Plaintiff, nor any other entity or person over whom this Court has jurisdiction and who is not a Defendant, caused or contributed to any of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment for damages against Defendants, in an amount exceeding the monetary jurisdictional limits of any and all lower courts that would otherwise have

jurisdiction, in amounts to be determined upon trial of this action, together with interest, costs, and any other appropriate relief.

### COUNT II: NEGLIGENT SUPERVISION, MONITORING, TRAINING, AND RETENTION

36. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopts and re-alleges each such allegation.

37. Supervision of agents, servants, employees, and/or residents under Defendants' control was and is a mandatory and unqualified duty.

38. Defendants, by and through their actual or apparent agents, servants, and/or employees, had a duty to engage in reasonable supervision, monitoring, training, and retention for any employees who interacted with children.

39. Defendants were familiar with the problem of nuns, priests, seminarians, deacons, teachers, and other employees molesting children within their parish.

40. Prior to Plaintiff's exposure to Perpetrator, and during the period while Plaintiff was being sexually abused by Perpetrator, Defendants' policy, created for the sake of their reputation, was that the actions of known child predators were to remain hidden from public knowledge, and not to be reported to police, district attorneys, and/or child welfare authorities.

41. Defendants, by and through their agents, servants, and/or employees, knew or reasonably should have known of Perpetrator's sexually violent propensities, that Perpetrator committed sexual acts against Plaintiff, and that he was capable of committing further sexual acts against Plaintiff and/or other children.

42. Defendants failed to properly observe, supervise, and monitor areas and individuals where it was known, knowable, and/or foreseeable that residents could be victims of sexual abuse without proper supervision.

43. Defendants, directly or by and through their actual agents, servants, and employees, systematically breached their duty to Plaintiff by:

   a. failing to protect Plaintiff from Perpetrator's sexual abuse;
   b. enabling Perpetrator, by failing to maintain appropriate policies and procedures, to have unrestricted access to children and to serve in a position of trust and authority;
   c. allowing Perpetrator to come into one-on-one contact with Plaintiff without effective supervision;
   d. failing to properly train and re-train staff who worked with children about child supervision and detecting, reporting, and preventing child sexual abuse;
   e. failing to properly monitor and/or supervise Perpetrator after providing him access to children;
   f. failing to adopt, promulgate, and enforce policies regulating church activities and the use of church facilities and properties;
   g. failing to prevent Perpetrator from committing wrongful sexual acts with children;
   h. failing to properly investigate the actions of agents, servants, employees, and/or residents under their control and supervision to ensure that children were subjected to safe and appropriate counsellors;
   i. failing to monitor for and subsequently investigate acts of sexual abuse and sexual acts committed by Perpetrator;
   j. failing to implement and/or enforce protocols to ensure that children would not fall victim to sexual predators like Perpetrator;

    k. failing to provide a safe environment where children are not subjected to sexual abuse;

    l. failing to remove Perpetrator from positions where he could act on his propensity and disposition to commit sexual abuse; and

    m. other negligent acts or omissions that may be determined during the course of discovery.

44. Defendants' aforementioned negligence directly and proximately caused Plaintiff to sustain severe and permanent damages as described above. Neither Plaintiff, nor any other entity or person over whom this Court has jurisdiction and who is not a Defendant, caused or contributed to any of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment for damages against Defendants jointly and severally, in an amount exceeding the monetary jurisdictional limits of any and all lower courts that would otherwise have jurisdiction, in amounts to be determined upon trial of this action, together with interest, costs, and any other appropriate relief.

### COUNT III: BREACH OF FIDUCIARY AND/OR SPECIAL DUTY

45. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs, including each and every factual and legal allegation hereinbefore and hereinafter alleged, and hereby re-adopts and re-alleges each such allegation.

46. While he was a minor, Plaintiff was entrusted by his parents to the control and supervision of Defendants and their agents, servants, and/or employees, including Perpetrator. During the times that Plaintiff was entrusted to Perpetrator, Perpetrator was under the supervision and control of Defendants.

47. Plaintiff's relationship with Defendants extended beyond that of an ordinary parishioner.

48. Plaintiff was taught by staff employed by Defendants that counsellors and other staff employed by Defendants were moral authorities whom he was obliged to trust and respect.

49. There existed a special relationship of trust, confidence, and reliance between Plaintiff and Defendants.

50. The entrustment of Plaintiff to the care, supervision, and influence of Defendants and Perpetrator while Plaintiff was a minor child, required Defendants and Perpetrator to assume a special and/or confidential and/or fiduciary relationship and to act in the best interests of Plaintiff and to protect him due to his infancy and vulnerability.

51. Pursuant to their special and/or confidential and/or fiduciary relationship, Defendants were entrusted with the well-being, care, and safety of Plaintiff.

52. Pursuant to their special and/or confidential and/or fiduciary relationship, Defendants assumed a duty and was bound to act in the best interests of Plaintiff at all times.

53. Defendants had a duty to prevent Plaintiff from being placed in a position where he could be subject to sexual abuse, especially given the known and ongoing risk of sexual abuse by clergy or others under the supervision and control of Defendants, but particularly by Perpetrator.

54. Defendants' failures to protect Plaintiff from the foreseeable harm of Perpetrator's abuse, as described in further detail above, and their failure to mitigate the effects of harm to Plaintiff once he had been abused, represented breaches of the special and/or confidential and/or fiduciary relationship.

55. Defendants' aforementioned breach of the special and/or confidential and/or fiduciary relationship directly and proximately caused Plaintiff to sustain severe and permanent

damages as described above. Neither Plaintiff, nor any other entity or person over whom this Court has jurisdiction and who is not a Defendant, caused or contributed to any of Plaintiff's damages.

WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally in an amount that exceeds $75,000

## COUNT IV: PREMISES LIABILITY

57. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

58. During the relevant timeframe, Plaintiff was sexually abused by Perpetrator.

59. These actions taken by Perpetrator was within the scope of his relationship with the Defendants because they occurred or were made possible by that relationship (including the grooming of Plaintiff that Perpetrator performed under the guise of her position with the Defendants) and were ratified expressly or impliedly by the Defendants.

60. The Defendants, by and through their agents, servants, and/or employees, knew or reasonably should have known of Perpetrator's sexual interest in children and misconduct and abuse of children; and that Perpetrator was capable of committing immoral and criminal acts upon Plaintiff.

61. The Defendants had a duty to protect Plaintiff during the time he was in the Defendants' care, custody, or responsibility and owed Plaintiff a special and fiduciary duty to care for him as a reasonably prudent parent would care him.

62. Plaintiff's care, welfare, and physical custody was entrusted to the Defendants while he was on the property of schools, parishes, or other locations subject to

the management or control of the Defendants, and while he was in the company of Perpetrator.

63. The Defendants ratified Perpetrator's conduct by declining to discipline him for his sexual abuse and exploitation of Plaintiff, and by enabling Perpetrator through their inaction to continue to sexually abuse children under the guise of offering guidance to children.

64. The Defendants operated a business where school buildings, and other properties within their controls were held open to the general public for the purpose of education and other business.

65. Plaintiff was an invitee or licensee and was allowed and encouraged to be in Defendants' property, and to go on Defendants' sponsored trips.

66. As such, the Defendants also owed Plaintiff a duty to protect him against unreasonable physical harm including any harm foreseeably caused by a third party, including Perpetrator.

67. The Defendants allowed Perpetrator to use their properties, and thus owed a duty to Plaintiff to exercise reasonable care so to control the conduct of Perpetrator and prevent her from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to Plaintiff.

68. The Defendants failed to warn Plaintiff of the danger Perpetrator posed.

69. The Defendants knew or should have known that Perpetrator posed a serious risk to the physical safety of Plaintiff before the time that Plaintiff was sexually abused or exploited.

70. It was foreseeable that Perpetrator would physically injure children such as Plaintiff, because, among other reasons, the Defendants knew or should have known that he had previously sexually abused or exploited children, committed sexual misconduct, or committed other misconduct.

71. Furthermore, the Defendants knew or had reason to know that Perpetrator sexually abused children, including Plaintiff, and caused him bodily harm. Plaintiff and other children were in danger of future harm and were helpless due to his age, Perpetrator's status, and the physical and emotional injury he suffered as a result of Perpetrator's abuse of. The Defendants had a continuing duty to exercise reasonable care to prevent such further injury.

72. The Defendants' failure to exercise reasonable care increased the risk of harm to Plaintiff and other children. Families and children, including Plaintiff and his parents, relied on the Defendants and Perpetrator, and suffered due to their reliance and the Defendants' breach of duty.

73. The Defendants were under a duty to exercise reasonable care to control Perpetrator as their employee—including those times when they sexually abused Plaintiff—so as to prevent them from causing harm or further harm.

74. The Defendants knew that they had the ability to control Perpetrator and knew or should have known of the necessity and opportunity to exercise their control over them.

75. Defendants' aforementioned negligence directly and proximately caused Plaintiff to sustain severe and permanent damages as described above.

Neither Plaintiff, nor any other entity or person over whom this Court has jurisdiction and who is not a Defendant, caused or contributed to any of Plaintiff's damages.

76. The Defendants knew they had the ability to control Perpetrator and knew or should have known of the necessity and opportunity to exercise their control over them.

WHEREFORE, Plaintiff demands judgement against Defendants and each of them in an amount that exceeds $75,000.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully submitted,

SCHOCHOR, STATON, GOLDBERG AND CARDEA, P.A.

_____
Jonathan Schochor (#7406010179)
jschochor@sfspa.com
Kerry D. Staton (#8011010366)
kstaton@sfspa.com
Joshua F. Kahn (#1012150095)
jkahn@sfspa.com
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
Telephone: 410-234-1000
Facsimile: 410-234-1010

*Counsel for Plaintiffs*